UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZHI ZHONG QIU,

                Plaintiff,

        - against -

ROBERT DIAMOND, JR., and ATLAS
MERCHANT CAPITAL LLC,

                Defendants.

Case No. 19-cv-2050-ER

**DEFENDANT ATLAS MERCHANT CAPITAL LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Andrew G. Gordon
Ross A. Wilson
1285 Avenue of the Americas
New York, New York 10019-6064
Tel: (212) 373-3000
Fax: (212) 492-0710
agordon@paulweiss.com
rwilson@paulweiss.com

*Attorneys for Defendant*
*Atlas Merchant Capital LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

ARGUMENT ....................................................................................................................... 5

I.    APPLICABLE STANDARDS ON A MOTION TO DISMISS ............................................ 5

    A.    Standard for a Rule 12(b)(6) Motion to Dismiss ..................................................... 5

    B.    Application of the Statute of Frauds on a Motion to Dismiss ................................. 6

II.    THE COMPLAINT IS BARRED BY NEW YORK'S STATUTE OF FRAUDS ............... 7

    A.    The Statute of Frauds Bars Claims for Brokers' or Finders' Fees Absent an
         Adequate Written Agreement ................................................................................... 7

    B.    The Statute of Frauds Bars Plaintiff's Contract Claim ........................................ 10

         1.    The February 10 E-mail Fails to Satisfy the Statute of Frauds
              Because It Expressly Indicates that a Formal Contract Was Needed ....... 11

         2.    The February 10 E-mail Fails to Satisfy the Statute of Frauds
              Because It Lacks Essential Terms ............................................................ 12

    C.    The Statute of Frauds Also Bars Plaintiff's Unjust Enrichment and
         Quantum Meruit Claims ......................................................................................... 14

III.    THE LETTER AGREEMENT DIRECTLY REFUTES PLAINTIFF'S CLAIMS ............. 16

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aleem* v. *Experience Hendrix, L.L.C.*,
2017 WL 3105870 (S.D.N.Y. July 20, 2017) ..........................................................6

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009)...................................................................................................5

*Ausch* v. *Sutton*,
151 A.D.3d 802 (N.Y. App. Div. 2017) ...................................................................15

*Bailey* v. *New York Law Sch.*,
2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017) .....................................................6, 17

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544 (2007)...................................................................................................5

*Belotz* v. *Jefferies & Co., Inc.*,
1999 WL 587916 (S.D.N.Y. Aug. 4, 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000) ...................15

*Bernat* v. *W. Seventy-Third St. Corp.*,
230 A.D. 18 (N.Y. App. Div. 1930) ...................................................................10, 11

*Carlin* v. *Davidson Fink LLP*,
852 F.3d 207 (2d Cir. 2017)......................................................................................3

*Chambers* v. *Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002).................................................................................5, 17

*Chardan Capital Markets, LLC* v. *Nw. Biotherapeutics, Inc.*,
2018 WL 3733948 (S.D.N.Y. Aug. 6, 2018)............................................................12

*Currier* v. *Prudential Ins. Co. of Am.*,
266 A.D.2d 596 (N.Y. App. Div. 1999) ...............................................................8, 14

*Dahan* v. *Weiss*,
120 A.D.3d 540 (N.Y. App. Div. 2014) ...............................................................8, 14

*DeRosis* v. *Kaufman*,
219 A.D.2d 376 (N.Y. App. Div. 1996) .....................................................................8

*Dorman* v. *Cohen*,
66 A.D.2d 411 (N.Y. App. Div. 1979) ...................................................................9, 14

*Duckett* v. *Hadley Engelhard, Esq.*,
   2017 WL 512455 (S.D.N.Y. Feb. 6, 2017)......................................................13, 14

*Ely* v. *Perthuis*,
   2013 WL 411348 (S.D.N.Y. Jan. 29, 2013) ..........................................................15

*Foros Advisors LLC* v. *Digital Globe, Inc.*,
   333 F. Supp. 3d 354 (S.D.N.Y. 2018)....................................................................12

*Freedman* v. *Chem. Constr. Corp.*,
   43 N.Y.2d 260 (1977) .............................................................................................7

*Gutkowski* v. *Steinbrenner*,
   680 F. Supp. 2d 602 (S.D.N.Y. 2010)..............................................................6, 15

*H. Rothvoss & Sons, Inc.* v. *Estate of Neer*,
   139 A.D.2d 37 (N.Y. App. Div. 1988) ...............................................................9, 12

*HPSC Inc.* v. *Matthews*,
   179 A.D.2d 974 (N.Y. App. Div. 1992) .............................................................8, 14

*Intertex Trading Corp.* v. *Ixtaccihuatl S.A. de CV*,
   754 F. Supp. 2d 610 (S.D.N.Y. 2010)..............................................................6, 15

*Kobre* v. *Instrument Sys. Corp.*,
   54 A.D.2d 625 (N.Y. App. Div. 1976), *aff'd*, 43 N.Y.2d 862 (1978) ...................13

*Koch* v. *Multipan, Inc.*,
   2001 WL 210004 (S.D.N.Y. Feb. 16, 2001) ..........................................................16

*Komlossy* v. *Faruqi & Faruqi, LLP*,
   2017 WL 722033 (S.D.N.Y. Feb. 23, 2017), *aff'd*, 714 F. App'x 11 (2d Cir. 2017).............15

*Madison Capital Markets, LLC* v. *Starneth Europe B.V.*,
   2016 WL 4484251 (S.D.N.Y. Aug. 23, 2016) ......................................................15

*McCall* v. *Pataki*,
   232 F.3d 321 (2d Cir. 2000).....................................................................................5

*In re Meister's Will*,
   39 A.D.2d 857 (N.Y. App. Div. 1972), *aff'd sub nom. In re Estate of Meister*,
   32 N.Y.2d 626 (1973) ......................................................................................11, 16

*Morris Cohon & Co.* v. *Russell*,
   23 N.Y.2d 569 (1969) ...........................................................................................16

*MP Innovations, Inc.* v. *Atl. Horizon Int'l, Inc.*,
   72 A.D.3d 571 (N.Y. App. Div. 2010) ..................................................................16

*Orderline Wholesale Distributors, Inc.* v. *Gibbons, Green, van Amerongen, Ltd.*,
  675 F. Supp. 122 (S.D.N.Y. 1987) ........................................................................15

*Ramos* v. *Lido Home Sales Corp.*,
  148 A.D.2d 598 (N.Y. App. Div. 1989) ...........................................................9, 11

*Rouzani* v. *Rapp*,
  203 A.D.2d 446 (N.Y. App. Div. 1994) ...........................................................9, 11

*Sel-Leb Mktg., Inc.* v. *Dial Corp.*,
  2002 WL 1974056 (S.D.N.Y. Aug. 27, 2002) ..................................................6, 18

*Sheehan* v. *Culotta*,
  99 A.D.2d 544 (N.Y. App. Div. 1984) ....................................................................9

*Simone* v. *N.V. Floresta, Inc.*,
  1999 WL 429504 (S.D.N.Y. June 18, 1999) .........................................................10

*Snyder* v. *Bronfman*,
  13 N.Y.3d 504 (2009) ..............................................................................2, 14, 15

*In re Stillwater Asset Backed Offshore Fund Ltd.*,
  2018 WL 1610416 (S.D.N.Y. Mar. 30, 2018) ...................................................6, 17

*Sugerman* v. *MCY Music World, Inc.*,
  158 F. Supp. 2d 316 (S.D.N.Y. 2001).....................................................................8

*Tamir* v. *Greenberg*,
  119 A.D.2d 665 (N.Y. App. Div. 1986) ...........................................................9, 11

*Transition Invs., Inc.* v. *The Allen O. Dragge, Jr. Family Tr.*,
  2012 WL 1848875 (S.D.N.Y. May 21, 2012) .....................................8, 12, 13, 16

*United Resource Recovery Corp.* v. *Ramko Venture Mgmt., Inc.*,
  584 F. Supp. 2d 645 (S.D.N.Y. 2008).....................................................................14

*Vanacore* v. *Vanco Sales LLC*,
  2017 WL 2790549 (S.D.N.Y. June 27, 2017) .......................................................15

*Wings Assocs., Inc.* v. *Warnaco, Inc.*,
  269 A.D.2d 183 (N.Y. App. Div. 2000) ................................................................15

*Zaitsev* v. *Salomon Bros., Inc.*,
  60 F.3d 1001 (2d Cir. 1995)..............................................................................8, 16

*Zeising* v. *Kelly*,
  152 F. Supp. 2d 335 (S.D.N.Y. 2001)......................................................................6

**STATUTES**

15 U.S.C. § 78cc (Exchange Act § 29(b)) ...................................................................13

15 U.S.C. § 78o(a)(1) (Exchange Act § 15(a)) ...........................................................13

N.Y. Gen. Oblig. Law § 5-701(a)(10) ...................................................................7, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 5

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Atlas Merchant Capital LLC ("Atlas" or "Defendant"), by and through its counsel, respectfully submits this memorandum of law in support of its motion to dismiss the Complaint of Plaintiff Zhi Zhong Qiu ("Mr. Qiu" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff claims that Atlas orally promised to pay him millions of dollars in broker's fees for negotiating an investment in Atlas by a third party. Yet Plaintiff cites no formal written contract evidencing this alleged agreement. As a result, Plaintiff's claims are barred in their entirety by New York's Statute of Frauds, which renders alleged brokers' fee agreements unenforceable absent an adequate written agreement. The Complaint should therefore be dismissed with prejudice.

*First*, Plaintiff's contract claim is barred by the Statute of Frauds, which sets exacting standards for what constitutes an adequate written agreement. The Statute of Frauds requires, among other things, that such a writing "state all of the essential terms of a complete agreement," such that "one reading it can understand from it what the agreement is," without recourse to parol evidence. (See cases cited *infra* at 8–9.) Further, such a writing is insufficient if it is apparent that "a more formal contract is to follow." (*Id.* at 9–10.)

Here, the brief e-mail Plaintiff proffers as the supposed written agreement utterly fails to satisfy these standards. It makes clear that it is not an agreement at all, but instead reflects a "discussion" concerning a "proposed" arrangement, which would later need to be "document[ed]" in a "comprehensive consulting agreement." Thus, it reflects the lack of a definitive agreement and indicates that any such agreement would need to be formally documented—and it never was. In addition, the e-mail expressly leaves unresolved essential terms, given that it (a) indicates that Plaintiff would provide "services" but says nothing about

what such services might be; and (b) indicates that any agreement would need to be made "in accordance with all applicable rules," yet, again, says nothing about what such rules might be. For each of these reasons, Plaintiff's purported contract claim fails to satisfy the Statute of Frauds and therefore should be dismissed.

*Second*, Plaintiff's two other claims—for quantum meruit and unjust enrichment—are also barred by the Statute of Frauds. That is because the applicable provision of the Statute governing brokers' fees also expressly bars quantum meruit and unjust enrichment claims, as the New York Court of Appeals confirmed in 2009. *Snyder* v. *Bronfman*, 13 N.Y.3d 504, 506 (2009). Plaintiff cannot evade the Statute of Frauds by simply pleading the same allegations as quantum meruit and unjust enrichment claims. They, too, are subject to dismissal as a matter of law under the Statute of Frauds.

*Third*, while the Statute of Frauds alone bars the Complaint in its entirety, the Complaint also fails for the additional, independent reason that its claims are contradicted by a document integral to the Complaint. Specifically, in a letter agreement concerning the investment at issue, the investor expressly represented and warranted to Atlas that there was no broker or finder who was owed any fee. Plaintiff relies on this and other transaction documents as the basis of his claim to have negotiated the investment. Given that the letter agreement squarely contradicts Plaintiff's claims, the Court need not accept his claims as true, and therefore should dismiss his Complaint.

Accordingly, the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

As alleged in the Complaint, the Plaintiff, Mr. Qiu, is a "Hong-Kong based businessperson." (Compl. ¶ 6.)[1]  Defendant Atlas is an investment firm headquartered in New York. (*See id.* ¶ 7.)

In his Complaint, Mr. Qiu claims that he is owed a broker's fee of $8 million for having allegedly helped Atlas negotiate an investment transaction with an unnamed "Investor" in 2016. (*See id.* ¶ 27.)  More specifically, Mr. Qiu alleges that he introduced Atlas to the Investor in October 2015, and that he thereafter served as an "indispensable intermediary between Defendants and the Investor," including by "negotiat[ing] the terms of [the Investor's] investment with Atlas." (*Id.* ¶¶ 13, 20–21.)  Mr. Qiu also maintains that he advised Atlas on the content of a proposed "letter agreement" with the Investor, which led to an investment made in the "summer of 2016." (*Id.* ¶¶ 22–27.)

Mr. Qiu cites no written contract in support of his $8 million broker's fee claim. Instead, he claims that he had an oral agreement with Atlas, based on "conversations in person and by phone," which was reached "[o]n or about February 9, 2016." (*Id.* ¶ 18.)  Mr. Qiu further alleges that, pursuant to that oral agreement, he was to be "paid for his work in proportion to the amount the Investor invested." (*Id.*)  Mr. Qiu's Complaint then quotes a subsequent e-mail sent on February 10 from Atlas's CEO (the "February 10 E-mail"), which the Complaint characterizes as having "memorialized [the] terms of the Agreement." (*Id.* ¶ 19.)  It does not.

Indeed, on its face, the February 10 E-mail reflects that no agreement had been reached with Mr. Qiu at all.  Instead, the e-mail references a "***discussion***" that took place between

---

[1] This memorandum of law cites the factual allegations in the Complaint solely for purposes of resolving this motion to dismiss, based on those allegations and any documents incorporated by reference into the Complaint. *See Carlin* v. *Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017).  Atlas reserves its right, if necessary, to answer or otherwise dispute the allegations in the Complaint at the appropriate time.

Mr. Qiu and Atlas's CEO "regarding the terms of [a] **proposed** consulting arrangement and strategic partnership with [the Investor]." (*Id.* (emphasis added).)  The e-mail goes on to state that, at some later time, "[w]e will document a strategic and comprehensive consulting agreement for you." (*Id.*)  That never happened.

The e-mail also references certain fees contemplated for Mr. Qiu's "services upon completion and in accordance with all applicable rules." (*Id.*)  It says nothing about what those particular "services" would be or what the "applicable rules" might be that would govern the contemplated arrangement.

The Complaint does not allege that Mr. Qiu responded to the February 10 E-mail, or that, in fact, such a written agreement was ever prepared or executed.  Rather, the Complaint recounts a series of demands for payment that Mr. Qiu made several months later (*id.* ¶¶ 28–41), along with alleged **oral** statements by Atlas's CEO that he would "honor their agreement" (*id.* ¶¶ 30, 40).

Contrary to Mr. Qiu's allegations, however, the Investor itself executed a written agreement expressly representing and warranting to Atlas that there was **"[n]o broker"** or other intermediary involved in the transaction who was entitled to any fee.  Specifically, in a letter agreement dated June 23, 2016 concerning the investment at issue, "[t]he Investor hereby represent[ed] and warrant[ed] [that] . . . . [n]o broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement." (Wilson Decl., **Ex. A**, at 1, 3.)  While Mr. Qiu alleges that he helped negotiate such a "letter agreement" (Compl. ¶ 23), his Complaint does not attach or quote this letter agreement.  In any event, the Complaint relies upon the existence of the letter agreement and

various other "transaction documents" as the basis of Mr. Qiu's claim to be owed a broker's fee. (*See, e.g.*, *id.* ¶¶ 23–24, 27.)

The Complaint purports to assert three claims, each based on exactly the same allegations described above:  breach of contract (Count I); quantum meruit (Count II); and unjust enrichment (count III).  Notably, the latter two quasi-contract counts expressly incorporate by reference all of the factual allegations in the Complaint, as well as the contract claim itself set forth in Count I.  (*See* ¶¶ 51, 56 ("Plaintiffs [*sic*] repeat, reallege, and incorporate by reference the allegations in each of the preceding paragraphs.").)  In other words, the quasi-contract claims are purely duplicative of the breach of contract claim asserted by Plaintiff.

## ARGUMENT

## I.    APPLICABLE STANDARDS ON A MOTION TO DISMISS

### A.    Standard for a Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed for failure to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Thus, a motion to dismiss tests the "legal sufficiency" of the allegations in a complaint.  *McCall* v. *Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

"For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Id.* at 153.  Further, "[i]f a plaintiff's own pleadings are contradicted by matters in such documents, the Court need not reconcile this difference or accept the plaintiff's

pleadings as true." *Bailey* v. *New York Law Sch.*, 2017 WL 6611582, at *7 (S.D.N.Y. Dec. 27, 2017) (Ramos, J.) (collecting cases); *accord In re Stillwater Asset Backed Offshore Fund Ltd.*, 2018 WL 1610416, at *7 (S.D.N.Y. Mar. 30, 2018) (Ramos, J.).

   **B.    Application of the Statute of Frauds on a Motion to Dismiss**

   "Consideration of the Statute of Frauds as an affirmative defense is appropriate on a motion to dismiss, given that such a motion is intended to weed out meritless claims." *Aleem* v. *Experience Hendrix, L.L.C.*, 2017 WL 3105870, at *4 (S.D.N.Y. July 20, 2017) (Ramos, J.) (citing cases).  "If an asserted contract falls within its ambit, the Statute of Frauds is a complete bar." *Id.* The dismissal of claims barred by the Statute of Frauds "avoid[s] needless efforts on the parts of the parties and the Court and avoid[s] needless discovery," which is "consistent with the purpose of the Statute of Frauds, namely, to protect people from alleged contractual obligations not supported by written evidence." *Zeising* v. *Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001).

   Where the Statute of Frauds applies, courts routinely dismiss such claims with prejudice, because "any attempt to replead the claim would be futile." *E.g.*, *Aleem*, 2017 WL 3105870, at *8; *Sel-Leb Mktg., Inc.* v. *Dial Corp.*, 2002 WL 1974056, at *6 (S.D.N.Y. Aug. 27, 2002) ("[I]t is clear that any amendment of the complaint would be futile because of the statute of frauds infirmity . . . ."); *Gutkowski* v. *Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010) (same); *see also Zeising*, 152 F. Supp. 2d at 344 (dismissing with prejudice); *Intertex Trading Corp.* v. *Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 616 (S.D.N.Y. 2010) (same).

## II.    THE COMPLAINT IS BARRED BY NEW YORK'S STATUTE OF FRAUDS

### A.    The Statute of Frauds Bars Claims for Brokers' or Finders' Fees Absent an Adequate Written Agreement

New York's Statute of Frauds, N.Y. Gen. Oblig. Law § 5-701, renders certain categories of alleged agreements "void" unless adequately set forth in writing.[2]  The applicable provision of the Statute here—subdivision (a)(10)—covers agreements to pay brokers' or finders' fees, and similar "contract[s] to pay compensation for services rendered in negotiating . . . business opportunit[ies]."  N.Y. Gen. Oblig. Law § 5-701(a)(10)[3]; *see Freedman* v. *Chem. Constr. Corp.*, 43 N.Y.2d 260, 266 (1977) (explaining that the provision "applies to various kinds of intermediaries who perform limited services in the consummation of certain kinds of commercial transactions," including both "finders" and "brokers").

As the New York Court of Appeals has explained, this branch of the Statute of Frauds serves an important purpose, because alleged agreements for brokers' and finders' fees are inherently susceptible to "false or exaggerated claims [that] can be asserted easily and disproved only with difficulty."  *Freedman*, 43 N.Y.2d at 266–67 (noting that the legislature enacted this provision "[t]o protect principals from 'unfounded and multiple claims for commissions', and in

---

[2] There is no dispute that New York law applies, as evidenced by both parties' citations to New York's Statute of Frauds, and the case law interpreting it, in their pre-motion letters.  (*See* ECF Nos. 12, 23.)  That is sensible in light of the Complaint's allegation that "material events concerning the transaction at issue occurred in this District." (Compl. ¶ 11.)

[3] The applicable provision of Section 5-701 states, in its entirety:

a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: . . . .

10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.

response to the substantial number of cases involving sales of businesses and business opportunities"); *see also Sugerman* v. *MCY Music World, Inc.*, 158 F. Supp. 2d 316, 322–23 (S.D.N.Y. 2001) (explaining that the rule is designed to "protect[] against contract cases which all too often degenerate into swearing contests and with the attendant risk of perjury") (internal quotation marks and alterations omitted).    Accordingly, plaintiffs bear a "heavy burden" to overcome the Statute of Frauds, particularly given the "broad application" that courts have given to this subdivision covering brokers' and finders' agreements.  *Transition Invs., Inc.* v. *The Allen O. Dragge, Jr. Family Tr.*, 2012 WL 1848875, at *4 (S.D.N.Y. May 21, 2012).

> To satisfy the Statute of Frauds, an adequate "written memorandum" must, among other things, "contain substantially the whole agreement, and all its material terms and conditions, so that one reading it can understand from it what the agreement is."  *Currier* v. *Prudential Ins. Co. of Am.*, 266 A.D.2d 596, 598 (N.Y. App. Div. 1999) (citing cases).  In other words, the alleged written agreement must "identify and describe the subject matter and state *all* the essential or material terms of the contract."  *DeRosis* v. *Kaufman*, 219 A.D.2d 376, 379 (N.Y. App. Div. 1996) (emphasis in original; citations omitted) (noting that "[t]his has been settled law in this state for over a century"); *accord Dahan* v. *Weiss*, 120 A.D.3d 540, 541 (N.Y. App. Div. 2014) (the written memorandum must "state all of the essential terms of a complete agreement").  In short, such a written memorandum must "completely evidence the contract which the parties made."  *Zaitsev* v. *Salomon Bros., Inc.*, 60 F.3d 1001, 1004 (2d Cir. 1995) (citation omitted).

> Moreover, it is hornbook law that "[a] writing is not a sufficient memorandum unless the 'full intention of the parties can be ascertained from it alone, without recourse to parol evidence.'"  *Dahan*, 120 A.D.3d at 542 (citation omitted); *accord HPSC Inc.* v. *Matthews*, 179 A.D.2d 974, 975 (N.Y. App. Div. 1992) ("In determining whether a memorandum or note satisfies

the Statute of Frauds, consideration is based solely upon the language in the document itself, without resort to parol evidence"); *see also Dorman* v. *Cohen*, 66 A.D.2d 411, 412 (N.Y. App. Div. 1979) ("It is hornbook law that the note or memorandum of the agreement, in order to satisfy the statute, 'must state the entire contract with reasonable definiteness and certainty, so that the substance thereof will appear from the writing without any resort to parol evidence.'") (citations omitted).

"Further, where there is an understanding that a more formal contract is to follow a memorandum, and essential terms have been omitted or left for future negotiations, the memorandum is insufficient to satisfy the Statute of Frauds." *Rouzani* v. *Rapp*, 203 A.D.2d 446, 447 (N.Y. App. Div. 1994) (citations omitted); *accord Sheehan* v. *Culotta*, 99 A.D.2d 544, 545 (N.Y. App. Div. 1984) (same; complaint barred where memorandum left an essential term "unsettled" and the "formal contract was never executed"); *H. Rothvoss & Sons, Inc.* v. *Estate of Neer*, 139 A.D.2d 37, 40 (N.Y. App. Div. 1988) ("Where, as here, the parties contemplate a formal, binding, written contract, which is never executed, there is no mutual assent and no contract.") (citation omitted). Such a memorandum "constitute[s] merely an agreement to agree, unenforceable under the Statute of Frauds." *Ramos* v. *Lido Home Sales Corp.*, 148 A.D.2d 598, 599 (N.Y. App. Div. 1989); *accord Tamir* v. *Greenberg*, 119 A.D.2d 665, 667 (N.Y. App. Div. 1986). As the New York Supreme Court, Appellate Division has explained:

> The memorandum, to satisfy the statute, must contain the terms of a concluded contract. It is not enough that the agreement is a note or memorandum in writing where any part of the intended contract, *i.e.*, the contract which the paper sued on purports to memorialize, is left to future negotiations. *A fortiori*, when the entire arrangement is still in the condition of negotiation, so that one party may withdraw, and where any term of the contract is left for future settlement, and ***where only certain matters have been agreed upon as preliminaries***, there can be no escape from the defense that ***the statute makes such a memorandum unenforcible*** [*sic*].

*Bernat* v. *W. Seventy-Third St. Corp.*, 230 A.D. 18, 20–21 (N.Y. App. Div. 1930) (emphasis added) (holding that, even where only "minor details" remained to be mutually agreed upon, the written memorandum at issue was inadequate to satisfy the Statute of Frauds because it was "merely an incomplete, conditional agreement, not intended as a final agreement"). Indeed, even where a written memorandum exists that satisfies the *other* requirements of the Statute of Frauds, it is still unenforceable where it is apparent that a "more formal contract" is to follow:

> [A]lthough the Correspondence is a written memorandum, signed by the party to be charged, designating the parties, and identifying and describing the subject matter, there was an understanding between the parties that a more formal contract was to follow the memorandum, and that material terms had been omitted or left for future negotiations. In such a case, "the memorandum is insufficient to satisfy the statute of frauds."

*Simone* v. *N.V. Floresta, Inc.*, 1999 WL 429504, at *9 (S.D.N.Y. June 18, 1999) (Brieant, J.)

In sum, the Statute of Frauds, by legislative design, creates a heavy burden for a plaintiff claiming to be owed brokers' or finders' fees: the plaintiff must produce an adequate written agreement that, on its face, completely evidences the contract, and that does not leave open the need to resolve important terms or contemplate a more formal contract to be executed later. As explained below, the Plaintiff here utterly fails to satisfy those exacting standards.

**B.    The Statute of Frauds Bars Plaintiff's Contract Claim**

Here, Plaintiff alleges no adequate memorandum to support the oral agreement on which he bases his contract claim. Instead, he cites a single e-mail that makes clear that no agreement had been reached at all, that essential terms remained unresolved, and that a more formal written contract would be executed later (*see* Compl. ¶ 19), which was never drafted.

Specifically, the February 10 E-mail on which Plaintiff bases his entire claim indicates that the parties were engaged in a preliminary "discussion" about a "proposed" arrangement, and that they had yet to resolve essential terms concerning compliance "with all

applicable rules" or to define the "services" Plaintiff would provide, which the parties intended to "document [in] . . . a comprehensive consulting agreement" at some later time once a final agreement had been reached.  (*Id.*)  As a result, the February 10 E-mail is patently insufficient to satisfy the Statute of Frauds, for two independent reasons.

### 1.    The February 10 E-mail Fails to Satisfy the Statute of Frauds Because It Expressly Indicates that a Formal Contract Was Needed

*First*, the February 10 E-mail indicates that no final agreement had been reached at all, and that any such agreement would need to be embodied in a "comprehensive consulting agreement."  (*Id.*)  That deficiency alone is fatal under the Statute of Frauds.

As the numerous cases cited above make clear, an indication in a writing that "a more formal contract is to follow" renders that writing insufficient under the Statute of Frauds.  *E.g.*, *Rouzani*, 203 A.D.2d at 447.  Even where a memorandum indicates that "certain matters have been agreed upon as preliminaries," it does not satisfy the Statute of Frauds where it is apparent that other terms are "left for future settlement," even seemingly "minor details."  *Bernat*, 230 A.D. at 20–21.  Thus, where, as here, a writing clearly contemplates a formal contract to follow, the preliminary writing is insufficient.  At most, it merely represents an unenforceable "agreement to agree."  *E.g.*, *Ramos*, 148 A.D.2d at 599; *Tamir*, 119 A.D.2d at 667.

Here, not only did the February 10 E-mail at issue expressly state that a "comprehensive consulting agreement" would need to be formally "document[ed]," it identified one of the essential terms that remained unsettled—compliance "with all applicable rules." (Compl. ¶ 19).  Further, the language of the February 10 E-mail was framed tentatively, explaining that it concerned a "discussion" relating to a "proposed" arrangement.  (*Id.*)  That last descriptor— "proposed"—is critical, because it demonstrates that no contract had been *accepted* or finally *agreed*.  *See, e.g.*, *In re Meister's Will*, 39 A.D.2d 857, 857–58 (N.Y. App. Div. 1972) (holding

11

that a series of writings failed to satisfy the Statute of Frauds, observing that the word "proposed" was "a most significant word" in the relevant correspondence), *aff'd sub nom. In re Estate of Meister*, 32 N.Y.2d 626 (1973).

In sum, "[w]here, as here, the parties contemplate a formal, binding, written contract, which is never executed, there is no mutual assent and no contract." *H. Rothvoss & Sons*, 139 A.D.2d at 40 (citation omitted).

### 2.    The February 10 E-mail Fails to Satisfy the Statute of Frauds Because It Lacks Essential Terms

*Second*, even if the February 10 E-mail did not expressly contemplate that a formal written contract would follow, it would still fail to satisfy the Statute of Frauds. That is because it plainly lacked essential terms.

For example, the February 10 E-mail failed to specify what "services" Plaintiff would provide. One can scarcely imagine a more essential term in a contract for services than a description of what those "services" are. *See, e.g.*, *Transition Invs.*, 2012 WL 1848875, at *7 (dismissing brokers' fee claims under the Statute of Frauds where the "email nowhere mentions certain key terms, such as the services that were to be provided"); *Foros Advisors LLC* v. *Digital Globe, Inc.*, 333 F. Supp. 3d 354, 362 (S.D.N.Y. 2018) (Koeltl, J.) (same, even where the "offer clause" at issue was set forth in a formal contract, where that clause failed to "specify the type of advisory work [the plaintiff] would perform [or] the scope of its work in the transaction"); *Chardan Capital Markets, LLC* v. *Nw. Biotherapeutics, Inc.*, 2018 WL 3733948, at *5 (S.D.N.Y. Aug. 6, 2018) (Castel, J.) (same, where the e-mail at issue "[did] not indicate what services [defendant] believed required payment").

That Plaintiff now alleges that the parties contemplated or discussed that he would be paid for his various services as an "intermediary" does not cure the fundamental defect in the

purported memorandum he proffers as evidence.  The Statute of Frauds prohibits consideration of any such allegations extrinsic to the purported memorandum itself, or other parol evidence.  *See, e.g.*, *Transition Invs.*, 2012 WL 1848875, at *9 (explaining that it is irrelevant that "it is arguably true that the emails pointed to by Plaintiff create some circumstantial evidence suggesting that there existed an oral or otherwise unsigned agreement between [the parties]"); *Duckett* v. *Hadley Engelhard, Esq.*, 2017 WL 512455, at *4 (S.D.N.Y. Feb. 6, 2017) (Sullivan, J.) (holding that a memorandum failed to satisfy the Statute of Frauds where it "contain[ed] a number of ambiguities regarding the material terms of the alleged contract that would require extrinsic evidence to resolve," and declining to "hazard a guess" because "parol evidence would unquestionably be required to ascertain the parties' 'full intention'"); *Kobre* v. *Instrument Sys. Corp.*, 54 A.D.2d 625, 626 (N.Y. App. Div. 1976) ("Even assuming that the writings viewed together constitute a memorandum which demonstrates the existence of a material term orally agreed upon, but which was not recited, such omission is fatal to the contention that the writings satisfy the Statute of Frauds.") (citation omitted), *aff'd,* 43 N.Y.2d 862 (1978).

In addition, as noted above, the February 10 E-mail expressly identified a critical term (or set of terms) that remained unresolved:  the need for any services to be completed "in accordance with all applicable rules."  (Compl. ¶ 19.)  And, given that Plaintiff was to operate as a broker for Atlas, the "applicable rules" governing his conduct were no minor detail.[4]  Again, the Court may not "hazard a guess" as to what "applicable rules" the parties may have contemplated

---

[4] While it is inappropriate to "hazard a guess" to supply an essential term, it is worth noting that the kind of serious issues left open by the reference to "all applicable rules" includes a question concerning whether Plaintiff was in compliance with any applicable rules as to the registration or conduct of broker-dealers.  Indeed, if Plaintiff was not a registered broker-dealer (and if U.S. securities law were to apply to the arrangement), that could be a serious violation of U.S. securities laws (or potentially the laws of other jurisdictions).  *See, e.g.*, 15 U.S.C. § 78*o*(a)(1) (Exchange Act § 15(a)) (requiring registration of broker-dealers); 15 U.S.C. § 78cc (Exchange Act § 29(b)) (providing that "[e]very contract made in violation of any provision of [the Exchange Act]. . . ***shall be void***") (emphasis added).

or seek to supply them by inference. *Duckett*, 2017 WL 512455, at \*4 (declining to "hazard a guess"); *HPSC*, 179 A.D.2d at 976 (declining to "supply [material terms] by inference," even where such terms were not "essential," and holding that the letter at issue failed to satisfy the Statute of Frauds). The Statute of Frauds limits the Court's consideration to the four corners of the purported memorandum—here, the February 10 E-mail. *See, e.g.*, *Dahan*, 120 A.D.3d at 542.

Thus, because the February 10 E-mail identifies the "applicable rules" as being a significant element of any final agreement but fails to give any indication of what those rules might be—much less with "reasonable definiteness and certainty"—it fails to satisfy the Statute of Frauds. *See, e.g.*, *Dorman*, 66 A.D.2d at 412; *Currier*, 266 A.D.2d at 598; *see also United Resource Recovery Corp.* v. *Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 654 (S.D.N.Y. 2008) (Sweet, J.) (noting that a memorandum failed to satisfy the Statute of Frauds where it failed to indicate "under what conditions a fee would be paid," among other deficiencies).

### C. The Statute of Frauds Also Bars Plaintiff's Unjust Enrichment and Quantum Meruit Claims

The Statute of Frauds also expressly bars Plaintiff's quantum meruit and unjust enrichment claims.

Indeed, the applicable subdivision of the Statute of Frauds covering brokers' and finders' fees—unlike the other branches of the Statute—expressly provides: "This provision shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ." N.Y. Gen. Oblig. Law § 5-701(a)(10). In 2009, the New York Court of Appeals laid to rest any possible doubts on this point: "We hold that quantum meruit and unjust enrichment claims brought to recover the value of plaintiff's services in helping to achieve a corporate acquisition are barred by the statute of frauds contained in General Obligations Law § 5–701(a)(10)." *Snyder* v. *Bronfman*, 13 N.Y.3d 504, 506 (2009).

14

Accordingly, "where the statute of frauds renders an agreement unenforceable, a plaintiff may not recover under a theory of unjust enrichment or quasi-contract." *Vanacore* v. *Vanco Sales LLC*, 2017 WL 2790549, at *4 (S.D.N.Y. June 27, 2017) (Seibel, J.) (citing *Snyder*, *inter alia*); *accord Gutkowski*, 680 F. Supp. 2d at 613 ("This deficiency is also fatal to Plaintiff's claims for unjust enrichment and quantum meruit. Under New York law, such claims are analyzed together as a single quasi-contract claim"); *Madison Capital Markets, LLC* v. *Starneth Europe B.V.*, 2016 WL 4484251, at *14 (S.D.N.Y. Aug. 23, 2016) (Sweet, J.) ("It is well settled that under New York law a plaintiff may not escape the Statute of Frauds by attaching the label 'quantum meruit' or 'unjust enrichment' . . . to the underlying contract claim.") (citation omitted). Myriad other decisions have held the same.[5]

Therefore, where, as here, "Plaintiff has failed to allege any actionable agreement in writing to be paid compensation, . . . that pleading failure also requires dismissal of its unjust enrichment claim." *Madison*, 2016 WL 4484251, at *14. Courts have specifically applied this rule where a purported written memorandum was held to be deficient for purposes of the Statute

---

[5] *Ausch* v. *Sutton*, 151 A.D.3d 802, 803 (N.Y. App. Div. 2017) ("[T]he statute of frauds precludes enforcement of an oral agreement, as well as any claim asserted under a contract implied in fact or in law, for compensation in negotiating a business opportunity.") (citations omitted); *Wings Assocs., Inc.* v. *Warnaco, Inc.*, 269 A.D.2d 183, 184 (N.Y. App. Div. 2000) ("Since the alleged agreement [for brokers' fees] is void by reason of the Statute of Frauds, plaintiff cannot use the same alleged promise as a basis for a cause of action sounding in quantum meruit.") (citation omitted); *Ely* v. *Perthuis*, 2013 WL 411348, at *4 (S.D.N.Y. Jan. 29, 2013) (dismissing quantum meruit and unjust enrichment claims, explaining that "[t]he requirement of a writing cannot be circumvented by an action for compensation in *quantum meruit*," and holding that the same reasoning applies to bar an unjust enrichment claim) (citation omitted); *Intertex Trading Corp.*, 754 F. Supp. 2d at 616 ("[I]t is well settled in New York . . . that a plaintiff may not assert an unjust enrichment claim to circumvent the statute of frauds."); *Belotz* v. *Jefferies & Co., Inc.*, 1999 WL 587916, at *5 (S.D.N.Y. Aug. 4, 1999) ("It is well-accepted that when N.Y. Gen. Oblig. Law § 5–701(a)(10) applies, '[a] plaintiff may not circumvent the statute of frauds by claiming unjust enrichment.'"), *aff'd*, 213 F.3d 625 (2d Cir. 2000); *Orderline Wholesale Distributors, Inc.* v. *Gibbons, Green, van Amerongen, Ltd.*, 675 F. Supp. 122, 128 (S.D.N.Y. 1987) ("The requirement of a writing cannot be circumvented by an action for compensation in *quantum meruit*."); *see also Komlossy* v. *Faruqi & Faruqi, LLP*, 2017 WL 722033, at *9 (S.D.N.Y. Feb. 23, 2017) ("[W]hile alternative pleading of contract and unjust enrichment claims is generally permissible, . . . there are exceptions, and this case involves one of them: A party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment.") (addressing a different branch of the statute), *aff'd*, 714 F. App'x 11 (2d Cir. 2017) (citations and internal quotation marks omitted).

of Frauds.  *See, e.g., MP Innovations, Inc.* v. *Atl. Horizon Int'l, Inc.*, 72 A.D.3d 571, 572 (N.Y.

App. Div. 2010) (holding that the cited e-mail was inadequate to satisfy the Statute of Frauds, and

that the plaintiff's unjust enrichment claim therefore must also fail because subdivision (a)(10),

"by its own terms, applies to implied as well as express contracts"); *Zaitsev*, 60 F.3d at 1004 (2d

Cir. 1995) (holding that the cited writings failed to satisfy the Statute of Frauds, and rejecting

plaintiff's unjust enrichment claim as a purported "alternative ground for recovery," explaining:

"Under New York law, a contract that is unenforceable under the Statute of Frauds is inadmissible

as evidence of the reasonable value of services.").[6]

Accordingly, because Plaintiff has failed to plead an adequate written agreement to

satisfy the Statute of Frauds, his quantum meruit and unjust enrichment claims are barred as a

matter of law, just the same as his breach of contract claim.

## III.    THE LETTER AGREEMENT DIRECTLY REFUTES PLAINTIFF'S CLAIMS

While the Complaint's failure to allege an adequate written agreement alone

warrants granting this motion to dismiss, there is another, independent basis for dismissal here:  a

document integral to the Complaint directly refutes Plaintiff's claims.  That document is the "letter

agreement" in which the Investor expressly represented and warranted that no broker or finder was

entitled to any fee in connection with the investment.

---

[6] Some cases have recognized a narrow exception allowing a quantum meruit claim to proceed where the plaintiff proffers a writing "detailing *all* of the terms except for compensation."  *Transition Invs.*, 2012 WL 1848875, at *10 (emphasis added) (citing *Morris Cohon & Co.* v. *Russell*, 23 N.Y.2d 569, 575–76 (1969)).  Here, however, the e-mail cited by Plaintiff falls far short of that standard: as explained above in Section II.B, it lacks essential, non-compensation-related terms and indicates that the parties had not even reached an agreement at all.  *See, e.g., Transition Invs.*, 2012 WL 1848875 (rejecting quantum meruit claim where "the signed documents proffered by Plaintiff fall far short of the *Cohon* standard"); *Koch* v. *Multipan, Inc.*, 2001 WL 210004, at *5 (S.D.N.Y. Feb. 16, 2001) ("[T]he documents exchanged by plaintiff and defendant fall far short of the 'all but the compensation' standard of *Morris Cohon*. . . . The number of unresolved issues in the case at bar is significantly greater than those in *Morris Cohon*.  Plaintiff's claim in quantum meruit is therefore dismissed."); *Meister's Will*, 39 A.D.2d at 858 ("In *Cohon*. . . . there was a writing, signed by the party to be charged, fully identifying the terms, unequivocally and clearly showing intention to be obligated.  This case . . . has no application here.")

As noted above, a complaint's allegations need not be accepted as true on a motion to dismiss where those allegations are self-contradictory or contradicted by statements in documents integral to a complaint. *See, e.g.*, *Bailey*, 2017 WL 6611582, at *7; *In re Stillwater*, 2018 WL 1610416, at *7. An extrinsic document falls into this category when the complaint incorporates the document by reference or "relies heavily upon its terms and effect." *Chambers*, 282 F.3d at 152–53.

Here, a document integral to the Complaint directly refutes Plaintiff's claims. Contrary to Plaintiff's allegation that he is owed a broker's fee in connection with securing an investment from the Investor, the Investor itself "represent[ed] and warrant[ed] [that] . . . . [n]o broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission." (Wilson Decl., **Ex. A**, at 1, 3.) That representation by the Investor is set forth in a letter agreement dated June 23, 2016 concerning its investment. (*Id.*)

Notably, in the Complaint, Plaintiff claims to have negotiated such a "letter agreement" between Atlas and the Investor, among various other "transaction documents." (Compl. ¶¶ 23–24.) Indeed, Plaintiff devotes an entire section of the Complaint to his lengthy allegations that he "served as an indispensable intermediary between Defendants and the Investor," including "negotiat[ing] terms of [the Investor's] investment with Atlas," providing "feedback on a draft proposed agreement with the Investor," revising a "proposed letter agreement," "review[ing] various transaction documents," attending various meetings, and otherwise making "extensive efforts . . . [in] his role as intermediary and advisor." (*Id.* ¶¶ 20–27.) In other words, he claims to have played an ***integral role*** in negotiating the terms of the investment, as set forth in a "letter agreement" and "various . . . [other] transaction documents." (*Id.* ¶¶ 23–24.) Indeed, that is the basis of his claim to be owed a broker's fee.

Accordingly, Plaintiff's Complaint relies heavily on the terms and effect of the transaction documents, including the "letter agreement" itself.  As a result, he is bound by their terms on this motion to dismiss, notwithstanding his artful pleading, which avoids quoting the Investor's representation or attaching the applicable letter agreement.  *See Sel-Leb Mktg.*, 2002 WL 1974056, at *3 ("[A] plaintiff's careful avoidance of certain documents in its pleading does not make those documents any less integral to the complaint.").

Thus, the Investor's representation and warranty in the letter agreement—that no broker was owed any fee—provides an independent basis to dismiss the Complaint.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Complaint is barred in its entirety as a matter of law.  Accordingly, Defendant Atlas respectfully requests that the Court dismiss the Complaint with prejudice.

Dated:    New York, New York
          May 29, 2019

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP

By:  /s/ Andrew G. Gordon
     Andrew G. Gordon
     Ross A. Wilson
     1285 Avenue of the Americas
     New York, New York 10019-6064
     Tel: (212) 373-3000
     Fax: (212) 492-0710
     agordon@paulweiss.com
     rwilson@paulweiss.com

     *Attorneys for Defendant*
       *Atlas Merchant Capital LLC*