# EXHIBIT A

EXECUTION COPY

June 23, 2016

Board of Directors
Atlas Merchant Capital Holdings, Ltd.
c/o Intertrust Corporate Services (Cayman) Limited
190 Elgin Avenue
George Town
Grand Cayman, KY1-9005
Cayman Islands


Dear Sirs

**ATLAS MERCHANT CAPITAL HOLDINGS, LTD. (THE "COMPANY")**

Atlas-Ruton Capital LLC, a Delaware limited liability company (the "**Investor**"), hereby agrees to subscribe for 100 shares Class X Shares of a nominal or par value US$0.01 each in the capital of the Company in accordance with the terms and conditions as set out in the Company's Articles of Association (the "**Shares**"), for the aggregate subscription price of $10,000,000.

<u>Investor Representations</u>

The Investor hereby represents and warrants to, and agrees with and acknowledges to, the Company that the following statements are true as of the date hereof. If there is any material change in any such representation, warranty, covenant, agreement or understanding under this agreement (this "**Agreement**"), the Investor will immediately furnish revised or corrected information to the Company:

1. The Shares are being acquired for investment purposes only for its own account and not with a view to or in connection with any distribution, reoffer, resale, or other disposition, in each case that is not in compliance with the United States Securities Act of 1933, as amended, and the rules and regulations of the United States Securities and Exchange Commission ("**SEC**") promulgated thereunder (the "**Securities Act**") and applicable state securities laws.

2. The Investor acknowledges that (a) the offering and sale of Shares in the Company have not been and will not be registered under the Securities Act, and are being made in reliance upon federal and state exemptions for transactions not involving a public offering, (b) the Company will not be registered as an investment company under the U.S. Investment Company Act of 1940, as amended (the "**Investment Company Act**") and (c) the Shares in the Company have not been approved or disapproved by the SEC or by any other federal, state or foreign securities commission or regulatory authority.

3. The Investor (a) (i) is an "accredited investor" as defined in Regulation D promulgated under the Securities Act and/or (ii) is a "non-US person" as defined in Regulation S promulgated under the Securities Act, (b) is a "qualified purchaser" as defined in Section 2(a)(51) of the Investment Company Act and the rules and regulations of the SEC promulgated thereunder (a "**Qualified Purchaser**") and (c) agrees to provide promptly such information and execute and deliver such documents as may be necessary to comply with any and all laws and ordinances to which the Company may be subject, including information relevant to a determination of whether the Investor is a Qualified Purchaser.

4. The Investor has been furnished with, and has carefully read, this Subscription Agreement and has been given the opportunity to (a) ask questions of, and receive answers from, the Company concerning the terms and conditions of this Subscription Agreement and other

matters pertaining to an investment in the Company and (b) obtain any additional information necessary to evaluate the merits and risks of an investment in the Company.  In considering its investment in the Company, the Investor has not relied upon any representations made by, or other information (whether oral or written) furnished by or on behalf of, the Company or any director, officer, employee, agent, representative or affiliate of such persons, other than as set forth in this Subscription Agreement and the Letter Agreement, dated as of the date hereof, among the Investor, the Company, Atlas Merchant Capital LLC, Atlas Merchant Capital LP, Atlas Merchant Capital GP LLC, AMC Fund GP LP, AMC Fund MGP LP, AMC MGP GP Ltd, Robert E. Diamond, Jr. and David I. Shamis (the "**Class X Supplement**").  The Investor has carefully considered and has, to the extent it believes necessary, discussed with its own legal, tax, accounting and financial advisors the suitability of an investment in the Company in light of its particular tax and financial situation, and has determined that the Shares being subscribed for hereunder is a suitable investment for the Investor.

5. The Investor (either alone or together with any advisors retained by the Investor in connection with evaluating the merits and risks of prospective investments) has sufficient knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of purchasing a Share and is able to bear the economic risk of such investment, including a complete loss of capital.  In making an investment decision, the Investor acknowledges that its Shares have not been recommended by any federal, state or foreign securities commission or regulatory authority and such authorities have not confirmed the accuracy or determined the adequacy of this Subscription Agreement.

6. The Investor is not subscribing for the Shares as a result of or subsequent to (a) any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium or broadcast over radio, television or the Internet or (b) any seminar or meeting whose attendees have been invited by any general solicitation or general advertising.

7. The Shares in the Company are speculative investments and involve a high degree of risk.  There is no public market for the Shares, and no such public or other market is expected to develop.  The transferability of the Shares in the Company is substantially restricted both by the terms of this Subscription Agreement, the Class X Supplement and applicable law, and the Shares may not be transferred generally to any person that is not a Qualified Purchaser.  The Investor has no right to require its Shares to be registered under the Securities Act.  The Investor will not be able to receive the benefit of the provisions of Rule 144 or 144A adopted by the SEC under the Securities Act with respect to the resale of its Shares.  Accordingly, it may not be possible for the Investor to liquidate the Investor's investment in the Company.

8. The Investor is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.  The execution, delivery and performance by the Investor of this Subscription Agreement are within its powers, have been duly authorized by all necessary action on its behalf, require no action by or in respect of, or filing with, any governmental body, agency or official, and do not and will not result in a breach of any of the terms, conditions or provisions of, or constitute a default under, any provision of any charter, by-laws, trust agreement, indenture, mortgage, deed of trust, credit, note or evidence of indebtedness, or any lease or other agreement, or any license, permit, franchise or certificate, regulation, law, order, writ, injunction, order or decree to which the Investor is subject.  This Subscription Agreement constitutes the valid and binding agreement of the Investor, enforceable against the Investor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

9. The Investor represents that any capital contributions by it to the Company shall not directly or indirectly be derived from activities that may contravene applicable laws and regulations, including anti-money laundering laws and regulations. The rules and regulations administered by United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") prohibit, among other things, the engagement in transactions with, and the provision of services to, certain countries, territories, entities and individuals. In addition, the programs administered by OFAC ("**OFAC Programs**") prohibit dealings with individuals or entities in certain countries regardless of whether such individuals or entities appear on the OFAC lists. The Investor represents and warrants that none of (a) the Investor; (b) any person controlling or controlled by the Investor; (c) any person having a beneficial interest in the Investor; (d) any person having a beneficial interest in the Shares; or (e) any person for whom the Investor is acting as agent or nominee in connection with this investment is a country, territory, individual or entity named on an OFAC list, or is a person or entity prohibited under the OFAC Programs.

10. The Investor represents and warrants that none of (a) the Investor; (b) any person controlling or controlled by the Investor; (c) any person having a beneficial interest in the Investor; (d) any person having a beneficial interest in the Shares; or (e) any person for whom the Investor is acting as agent or nominee in connection with this investment is (i) a current or former senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party or a senior executive of a foreign government-owned corporation (a "**Senior Foreign Political Figure**"), (ii) any corporation, business or other entity that has been formed by, or for the benefit of, a Senior Foreign Political Figure, (iii) any immediate family member of a Senior Foreign Political Figure, (iv) an affiliate of a Senior Foreign Political Figure or (v) a close associate of a Senior Foreign Political Figure.

11. The Investor understands and agrees that in order to ensure compliance under applicable anti-money laundering laws and regulations, the Company may require a detailed verification of the identity of any person seeking to make an investment in the Company or acquire Shares. The Company reserves the right to request such information as is necessary to verify the identity of the Investor. In the event of delay or failure by the Investor to produce any information required for verification purposes, the Company may refuse to accept any capital contributions by the Investor until proper information has been provided.

12. No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or the Class X Supplement.

Payment

The subscription price shall be paid by us to the Company on the date hereof, or such other date as may be agreed (the "**Issue Date**").

*[Signature Page to Follow]*

3

We hereby request that you allot and issue the Shares to us on the Issue Date, credited as fully paid, and register our name in the register of members of the Company as the holder of the Shares.

**Atlas-Ruton Capital LLC**

By: Atlas-Ruton Capital 1, Ltd., *its sole member*

_____
Name:  Rutong Xie
Title:   Director


Agreed and Accepted by

**ATLAS MERCHANT CAPITAL HOLDINGS, LTD.**


_____
Name: David I. Shamis
Title:   Director

[Signature Page to Atlas Merchant Capital Holdings, Ltd. Subscription Agreement]

Agreed and Accepted by

**ATLAS MERCHANT CAPITAL HOLDINGS, LTD.**

_____
Name: David I. Shamis
Title:   Director

*[Signature Page to Atlas Merchant Capital Holdings, Ltd. Subscription Agreement]*